UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
JESSICA GARCIA, *individually and on behalf of others similarly situated,*

                     *Plaintiffs*,

      -against-

LA GRAN COLOMBIA BAKERY INC. (D/B/A LA NUEVA COLOMBIA), LA GRAN COLOMBIA BAKERY & PIZZERIA, INC. (D/B/A LA NUEVA COLOMBIA), NADIA ALMADA and ALEX CASTRO,

                     *Defendants.*
------------------------------------------------------------------X

21-cv-2714

**DECLARATION OF MICHAEL FAILLACE IN SUPPORT OF PLAINTIFF'S MOTION FOR <u>DEFAULT JUDGMENT</u>**

      Michael Faillace, an attorney duly admitted to practice in New York and in this Court, affirms on penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

      1.     I represent Plaintiff Jessica Garcia ("Plaintiff"), in this lawsuit for unpaid wages, liquidated damages, and attorneys' fees under the FLSA and New York Labor Law and regulations.

      2.     I submit this affirmation in support of Plaintiff's application for a default judgment against La Gran Colombia Bakery Inc. (d/b/a La Nueva Colombia), La Gran Colombia Bakery & Pizzeria Inc. (d/b/a La Nueva Colombia), Nadia Almada, and Alex Castro.

<u>Procedural History</u>

      3.     Plaintiff commenced this action against La Gran Colombia Bakery Inc. (d/b/a La Nueva Colombia), La Gran Colombia Bakery & Pizzeria Inc. (d/b/a La Nueva Colombia), and Alex Castro by filing the Complaint ("Complaint") and associated documents on May 14, 2021. A copy of the Complaint in this case is annexed hereto as <u>Exhibit 1.</u>

4. Plaintiff filed an Amended Complaint on May 27, 2021 adding Defendant Nadia Almada. A copy of the Amended Complaint in this case is annexed hereto as Exhibit 2.

5. This is an action for unpaid minimum wages, liquidated damages, interest, costs and attorneys' fees under the Fair Labor Standards Act (29 U.S.C. § 201 et seq., "the "FLSA") the New York Labor Law ("NYLL"), and associated rules and regulations. See Ex. 1-2.

6. The Court has subject matter jurisdiction of the Plaintiff's federal claims pursuant to 29 U.S.C. § 201 *et seq.* (FLSA) and 28 U.S.C. § 1331 (federal question), and jurisdiction over the New York state law claims (such as the NYLL) under 28 U.S.C. § 1367(a) (supplemental jurisdiction). *See* Ex. 1-2.

7. A summons and copy of the Amended Complaint was properly served on defendant Alex Castro on June 18, 2021. A copy of the Affidavit of Service on defendant Alex Castro, Inc. is attached hereto as Exhibit 3.

8. A summons and copy of the Amended Complaint were properly served on defendant Nadia Almada on June 18, 2021. A copy of the Affidavit of Service on defendant Nadia Almada. is attached hereto as Exhibit 4.

9. A summons and copy of the Amended Complaint were properly served on defendant La Gran Colombia Bakery Inc. on June 17, 2021. A copy of the Affidavit of Service on defendant La Gran Colombia Bakery Inc. is attached hereto as Exhibit 5.

10. A summons and copy of the Amended Complaint were properly served on defendant La Gran Colombia Bakery & Pizzeria Inc. on June 17, 2021. A copy of the Affidavit of Service on defendant La Gran Colombia Bakery & Pizzeria Inc. is attached hereto as Exhibit 6.

11. Upon information and belief, La Gran Colombia Bakery Inc. and La Gran Colombia Bakery & Pizzeria Inc., being corporations organized and existing under the laws of the

State of New York, Alex Castro, and Nadia Almada are neither infants nor incompetent persons nor in the active service of the United States military.

12. Plaintiff moved for entry of default on August 17, 2021. The Clerk of the Court then noted default against Defaulting Defendants on August 30, 2021. True and correct copies of the Clerk's Certificates of Default is attached hereto as Exhibit 7.

13. The declaration of Jessica Garcia (Plaintiff Dec.) in support of this motion for default judgment is annexed as Exhibit 8.

Statement of Facts Supporting Entry of Judgment

14. As alleged in the Complaint and as stated in Plaintiff's affidavit, Defendants. own(ed), operate(d), and control(led) a Colombian Restaurant located at 9107 31st Ave., East Elmhurst, New York 11369 under the name "La Nueva Colombia." (Am. Compl. ¶ 2; Plaintiff Dec. ¶ 3).

15. Plaintiff is former employee of Defendants. (Am. Compl. ¶ 2; Plaintiff Dec. ¶ 3).

16. Defendants had the power to hire and fire Plaintiff, controlled Plaintiff's terms and conditions of employment, and determined the rate and method of Plaintiff's compensation. (Am. Compl. ¶ 40; Plaintiff Dec. ¶ 5).

17. Upon information and belief, Defendants had a gross annual volume of sales of over $500,000.00. (Am. Compl. ¶ 36).

18. Upon information and belief, Defendants were directly involved in interstate commerce. (Am. Compl. ¶ 37).

19. Defendants regularly required Plaintiff to work without paying her minimum wage. (Am. Compl. ¶ 16; Plaintiff Dec. ¶¶ 19-21).

20. Defendants regularly required Plaintiff to work without paying her overtime. (Am. Compl. ¶ 16 ; Plaintiff Dec. ¶ 18).

Jessica Garcia

21. Plaintiff was employed by Defendant as a waitress, bartender, and food preparer from approximately May 1, 2019 until on or about February 4, 2021. (Am. Compl. ¶ 31; Plaintiff Dec. ¶¶ 3, 6.)

22. Plaintiff's work did not require discretion or independent judgment. (Am. Compl. ¶ 45; Plaintiff Dec. ¶ 9).

23. From approximately May 2019 until on or about June 2019, Plaintiff Garcia worked from approximately 6:00 a.m. until on or about 3:00 p.m., Mondays through Wednesdays and from approximately 3:00 p.m. until on or about 12:00 a.m., Fridays through Sundays (typically 54 hours per week). (Am. Compl. ¶ 45; Plaintiff Dec. ¶ 10).

24. From approximately July 2019 until on or about September 2019, Plaintiff Garcia worked from approximately 6:00 a.m. until on or about 3:00 p.m., Tuesdays through Sundays (typically 54 hours per week). (Am. Compl. ¶ 46; Plaintiff Dec. ¶ 11 ).

25. From approximately September 2019 until on or about October 11, 2019, Plaintiff Garcia worked from approximately 3:00 p.m. until on or about 8:00 p.m. to 10:00 p.m., 6 days a week (typically 30 to 42 hours per week). (Am. Compl. ¶ 47; Plaintiff Dec. ¶ 12).

26. From approximately October 12, 2019 until on or about November 23, 2019, Plaintiff Garcia worked from approximately 6:00 a.m. until on or about 3:00 p.m., Wednesdays through Sundays (typically 45 hours per week). (Am. Compl. ¶ 48; Plaintiff Dec. ¶ 13).

27. From approximately November 23, 2019 until on or about May 2020, Plaintiff Garcia worked from approximately 3:00 p.m. until on or about 11:00 p.m. to 12:00 a.m., Thursdays through Sundays (typically 42 to 45 hours per week). (Am. Compl. ¶ 49; Plaintiff Dec. ¶ 14).

28. From approximately June 2020 until on or about December 2020, Plaintiff Garcia worked from approximately 3:00 p.m. until on or about 11:00 p.m. to 1:00 a.m., Thursdays through Sundays (typically 32 to 40 hours per week). (Am. Compl. ¶ 50; Plaintiff Dec. ¶ 15).

29. From approximately January 2021 until on or about February 4, 2021, Plaintiff Garcia worked from approximately 6:00 a.m. until on or about 3:00 p.m., Tuesdays and Wednesdays, from approximately 8:00 a.m. until on or about 5:00 p.m., Thursdays through Saturdays, and from approximately 7:00 a.m. until on or about 2:00 p.m., on Sundays (typically 52 hours per week). (Am. Compl. ¶ 51; Plaintiff Dec. ¶ 16).

30. Throughout her employment, Defendants paid Plaintiff Garcia her wages in cash. (Am. Compl. ¶ 52; Plaintiff Dec. ¶ 17).

31. During the month of May 2019, Defendants paid Plaintiff Garcia $8.50 per hour. (Am. Compl. ¶ 53; Plaintiff Dec. ¶ 19).

32. From approximately June 2019 until on or about May 2020, Defendants paid Plaintiff Garcia $9.50 per hour. (Am. Compl. ¶ 54; Plaintiff Dec. ¶ 20).

33. From approximately June 2020 until on or about February 4, 2021, Defendants paid Plaintiff Garcia $10.00 per hour. (Am. Compl. ¶ 55; Plaintiff Dec. ¶ 21).

34. Throughout Plaintiff Garcia's employment at La Nueva Colombia, the Defendants would withhold some or all of her tips. Defendants withheld a portion of all the tips customers paid through credit card and used those tips for tax deductions, to replace money missing from the cashier, to pay for the meals that were left unpaid and to replace deliveries or pickup orders that

5

were not delivered or not picked up. On five Sundays in 2020, she received no tips for any of my work. (Am. Compl. ¶ 60; Plaintiff Dec. ¶ 22).

35. Plaintiff Garcia estimates that the total value of all tips taken from her is approximately $2,500.00. (Plaintiff Dec. ¶ 23).

36. Defendants never granted Plaintiff Garcia any breaks or meal periods of any kind. (Am. Compl. ¶ 57; Plaintiff Dec. ¶ 24).

37. Plaintiff Garcia was never notified by Defendants that her tips were being included as an offset for wages. (Am. Compl. ¶ 58; Plaintiff Dec. ¶ 25).

38. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Garcia's wages. (Am. Compl. ¶ 59; Plaintiff Dec. ¶ 26).

39. Plaintiff Garcia was not required to keep track of her time, nor to her knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected her actual hours worked.  (Am. Compl. ¶ 61; Plaintiff Dec. ¶ 28).

40.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garcia regarding overtime and wages under the FLSA and NYLL. (Am. Compl. ¶ 62; Plaintiff Dec. ¶ 29).

41. Defendants did not provide Plaintiff Garcia an accurate statement of wages, as required by NYLL 195(3).  (Am. Compl. ¶ 63; Plaintiff Dec. ¶ 30).

42. Defendants did not give any notice to Plaintiff Garcia, in English and in Spanish (Plaintiff Garcia's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).  (Am. Compl. ¶ 64; Plaintiff Dec. ¶ 31).

43. Defendants required Plaintiff Garcia to purchase "tools of the trade" with her own funds—including boxes of face masks – out of her own pocket. Plaintiff Garcia estimates she was required to spend approximately $75.00 on masks for the restaurant. (Plaintiff Dec. ¶ 27).

### Plaintiff is entitled to Judgment by Default

44. It is well settled that Defendants who fail to file an answer or otherwise move in respect to a complaint filed, are deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006) ("Rule 55 tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party") (citation omitted).

45. Defendants have failed to file an answer or otherwise respond to the Amended Complaint, despite the time to do so have expired.

46. Thus, Plaintiff's allegations are unchallenged, and consequently the Complaint and declarations attached hereto establish Plaintiff's right to default judgment.

47. Upon entry of a default, the court may award damages based upon evidence submitted through affidavits and exhibits, or by an evidentiary hearing. Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012). "While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory." Id. "Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'" Id. (quoting Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993)).

48. Plaintiff maintains that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages. Based on the evidence Plaintiff has put forward,

7

damages, including back pay, liquidated damages, and prejudgment interest, should be awarded in the amount of $21,420.07, and attorneys' fees and costs should be awarded in the amount of $2,960.00

Plaintiff's Damages Calculation

49. Annexed as Exhibit 9 is a chart setting out the damages Plaintiff is entitled to recover.

50. In the damages chart, the Plaintiff's wage and hour damages are based on her calculations as set forth in his Declaration.

51. The legal basis for the damages calculations within the chart are set out below.

Back Pay

52. Under the FLSA, employees must be paid at least $7.25 per hour, and one-and-one-half times their regular rate for each hour worked over forty (40) hours worked in a week. 29 U.S.C. § 207(a)(1). Thus, overtime work must be compensated at a rate of at least $10.88 per hour.

53. The applicable New York minimum wage rate at all relevant times was $15.00 per hour. N.Y.L.L. §652. New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week. 12 N.Y.C.R.R. § 146-1.4. The regular rate is the rate an employee is regularly paid for each work hour. 12 N.Y.C.R.R. § 146-3.5.

54. The onus is on the employer to maintain proper records of employees' hours worked, 29 U.S.C. § 211(c). "In a FLSA case, in the absence of rebuttal by [D]efendants, [P]laintiffs' recollection and estimates of hours worked are presumed to be correct." *Zeng Liu v.*

*Jen Chu Fashion Corp*, 2004 U.S. Dist. LEXIS 35, *8 (S.D.N.Y. 2004) (the court accepted the Plaintiffs' estimates of hours worked).

> An employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated[,] and if he produces sufficient evidence to show the amount and extent of that work by just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Id.* (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), and other cases).

55. Here, at all relevant times, Plaintiff was not paid overtime at the rate of one-and-a-half times her regular rate. Rather, she was paid her straight hourly rate for all hours worked.

56. Further all relevant time, Plaintiff was not paid at the applicable minimum wage.

57. Defendants were not entitled to take a tip credit for the following because 1) Defendants were not entitled to a tip credit because the tipped worker's and Plaintiff Garcia's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146). 2) Defendants failed to inform Plaintiff Garcia that Defendants intended to take a deduction against Plaintiff Garcia's earned wages for tip income, as required by the NYLL before any deduction may be taken. 12 NYCRR 146-1.3.

58. Furthermore, at all times during her employment, Plaintiff Garcia was paid at a wage that is lower than the minimum cash wage amount the employers in New York City are required to pay tipped workers. 12 NYCRR 146-1.3.

59. Thus, Plaintiff Garcia's back wages are calculated by first determining her lawful weekly wage had she been paid at the full applicable minimum wage of $15.00 per hour and proper

overtime rate of $22.50 per hour (her "lawful weekly pay") and then subtracting the amount she was actually paid (her "credited weekly pay"). *See* Ex. 9.

60. Plaintiff is thus owed $29,404.50 in unpaid minimum wage and overtime wages.

### Three Year Statute of Limitations Under FLSA

61. Under the FLSA, when the underpayment by the employer is willful, the limitations period increases from two (2) to three (3) years. 29 U.S.C. § 255(a).

62. Willfulness under the FLSA means the employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute," McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); Damassia v. Duane Reade, Inc., 2005 U.S. Dist. LEXIS 9768 at *5 (S.D.N.Y. May 20, 2005) (willfulness was properly pleaded by alleging, inter alia, that the employer was "aware of the existence of the FLSA and its overtime requirements."). Willfulness is also established when an employer fails to investigate whether its compensation policy was legal. See Hardrick v. Airway Freights Systems, Inc., 63 F. Supp. 2d 898, 904 (N.D.Ill. 1999); v. IBP, Inc., 339 F.3d 894, 909 (9th Cir. 2003), aff'd, 126 S.Ct. 514 (2005) (upholding the three-year statute of limitations because employer was on notice of FLSA requirements but "took no affirmative action to assure compliance" with them).

63. In the present matter, Defendants were aware, or should have been aware, of the existence of the FLSA and its overtime requirements. However, the Defaulting Defendants knew or disregarded the fact that their conduct was prohibited by the FLSA. Furthermore, even if the Defaulting Defendants did not know of the FLSA, the Defendants' actions are still willful because the Defaulting Defendants failed to investigate whether their compensation policy was legal. See Hardrick, 63 F. Supp. 2d at 904.

64. Moreover, the Defendants failed to post the required information concerning the minimum wage laws, paid the Plaintiff in cash, and had no system for recording, or even having Plaintiff record, her hours.

65. This deliberate decision to disregard both FLSA and New York law, as well as Defendant' failure to take any affirmative step towards compliance, amount to willfulness for purposes of the FLSA and New York law.  Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005)("A failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages") (internal quotations omitted).

66. As Plaintiff can establish that Defendants' violation of the FLSA was willful, they are entitled to a three-year limitations period under the FLSA, i.e., starting from June 3, 2020, three years before the complaint was filed.  See, e.g., Decraene v. Neuhaus (U.S.A.), Inc., 2005 U.S. Dist. LEXIS 10836 at *23-*24 (S.D.N.Y. 2005).  Furthermore, under the New York Labor Law and regulations, the limitations period is six years, regardless of willfulness. N.Y. Labor Law § 663(3).  Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA.  See Godlewska v. Human Dev. Assoc., Inc., 2006 U.S. Dist. LEXIS 30519 at *12 (E.D.N.Y. May 18, 2006).  Therefore, back pay under the New York Labor Law should be calculated from the start of Plaintiff's employment, which was less than six years from the filing date.

Wage Notice and Statement Violations

67. Defendants never provided Plaintiff with annual notices of her wages, or a wage statement, as required by NYLL §§ 195(1), 195(3).

68. Plaintiff is therefore entitled to statutory damages in the maximum amount of $5,000 under each section, for a total of $10,000.00.

## Liquidated Damages

69. Liquidated damages of 100% of the unpaid wages under the FLSA are mandatory. See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages"). The employer can make this award discretionary, however, by a showing of good faith. 29 U.S.C. § 260. In the present matter, the Defaulting Defendants have defaulted. Consequently, they cannot meet this burden, and thus an award of liquidated damages is mandatory. Liquidated damages should be awarded in an amount equal to the unpaid minimum wages and overtime. 29 U.S.C. § 216(b).

70. Likewise, under the NYLL, "an employee is also entitled to liquidated damages 'equal to one hundred percent of the total of such underpayments found to be due,' unless the employer proves a good faith basis for believing he or she was in compliance with the law." Wei, 2014 U.S. Dist. LEXIS 182325, *23 (quoting N.Y. Lab. Law § 663(1)).

71. Given the uncontroverted evidence of Defaulting Defendant' lack of good faith Plaintiff is entitled by statute to liquidated damages under the New York Labor Law, computed at 25% of the unpaid minimum and overtime wages for the period of time prior to April 9, 2011 and 100% for any subsequent unpaid minimum and overtime wages.

72. Plaintiff's total unpaid wages equal $29,404.50, all incurred after April 9th, 2011. Thus, he is entitled to 100% liquidated damages in the amount of $29,404.50. See Ex. 9.

## Attorneys' Fees and Costs

73. The FLSA and the New York Labor Law both contain fee-shifting provisions for actions to recover unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition

to any judgment awarded to the Plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court").

74. Plaintiff incurred costs and attorneys' fees in pursuing this action, and seeks an award of reasonable attorney's fees and costs.

75. The costs are a total of $665.00, including a filing fee of $402.00, and fees associated with serving the Defendants with the summons and complaint.

76. A breakdown of attorneys' fees and costs incurred in filing the Complaint and seeking default, in the form of this firm's standard billing sheet is attached hereto as <u>Exhibit 10</u>.

77. The timekeepers on this matter are indicated by the following initials and have the following rates:

    a. "MF" — Michael Faillace, $450 per hour
    b. "CE" – Clela Errington - $350 per hour
    c. "PL" – Paralegal work, $100 per hour

A brief biography of each attorney who performed billed work in this matter is as follows:

    i. Michael Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). He taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and he is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace,

13

      published by Practicing Law Institute (PLI), and other employment law publications and presentations. .

  ii.  Clela A. Errington is an associate at Michael Faillace & Associates, P.C. She is a 2012 graduate of New York University School of Law. She began her career at a series of small law firms focusing on labor and employment law, followed by several years providing litigation support to large law firms. She returned to litigation in 2019, joining the Jones Law Firm, P.C., and joined Michael Faillace & Associates in 2020.

<u>Conclusion</u>

78.    Based on the above information and exhibits, Plaintiff asserts the record supports a judgment against the Defendant in favor of Plaintiff in the total amount of $72,699.21 for unpaid wages, notice and recordkeeping violations, liquidated damages, prejudgment interest and other claims. Prejudgment interest continues to run and should ultimately be computed through the date judgment is entered.

79.    Additionally, Plaintiff is entitled to $3,765.00 in attorneys' fees and costs. See Exhibit 10.

80.    As shown herein, no inquest is necessary when, as in the present case, the Court has before it the proper measure of damages and evidence submitted by the Plaintiff that allows damages to be calculated with reasonable certainty.

81.    No part of the judgment sought has been paid.

82.    Sufficient definitive information and documentation is provided such that the amount provided for in the proposed judgment can be calculated, based upon allegations contained in the Complaint, and supplemented by the Plaintiff's affidavit accompanying these motion papers.

83. Plaintiff also makes a request for interest on the principal amount of the judgment not to exceed 9%, as stated above and in the damages calculations.

84. Plaintiff also requests that the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4).

85. The calculations made in arriving at the proposed judgment amount are set forth in both the explanation above, and in the damages chart itself.

86. A proposed form of judgment is attached as <u>Exhibit 11</u>.

87. For the reasons stated above and in the accompanying exhibits, the Plaintiff's motion for a default judgment should be granted.

Dated: New York, New York
      September 21, 2021

                                                    /s/Michael Faillace
                                                  Michael Faillace, Esq.